

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 FEB 27   AM II: 47

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

LJW/DEH: USAO # 2018R00276

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**KEITH ALLEN GLADSTONE,**<br><br>                      **Defendant** | **UNDER SEAL**<br><br>Criminal No. *CCB-19-094*<br><br>**(Conspiracy to Deprive Civil Rights, 18 U.S.C. § 241; Conspiracy to Commit Offenses Against the United States, 18 U.S.C. § 371; Witness Tampering, 18 U.S.C. § 1512)** |

## INDICTMENT

The Grand Jury for the District of Maryland charges that at all times relevant to this Indictment:

### COUNT ONE
### (Conspiracy to Deprive Civil Rights)

1.     The Baltimore Police Department ("BPD") is an agency of the State of Maryland whose law enforcement jurisdiction includes Maryland's largest city, Baltimore.

2.     Sworn members of the BPD must abide by the Law Enforcement Officer's Code of Ethics, which provides, in pertinent part:

> As a Law Enforcement Officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation; the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department … I recognize the badge of my office as a symbol of public faith and I accept it as a public trust to be held so long as I am true to the ethics of police service.

3.     KEITH ALLEN GLADSTONE joined the BPD on November 20, 1992, and became a police officer. GLADSTONE was promoted to Sergeant on December 16, 2011. GLADSTONE retired from the BPD on December 25, 2012, but then was reinstated as a

Sergeant on December 9, 2013.  In March 2014, GLADSTONE was the officer-in-charge of a Special Enforcement Section (SES) unit assigned to BPD's Western District.  GLADSTONE retired for a second time from the BPD on May 1, 2017.

4.      W.J. joined the BPD on February 20, 2003, and became a police officer.  W.J. was promoted to Sergeant on October 14, 2013.  In March 2014, W.J. was the officer-in-charge of an SES unit assigned to BPD's Western District.

5.      In March of 2014, Officer 1, Officer 2, Officer 3, Officer 4, and Officer 5 were employed by the BPD.

6.      GLADSTONE and W.J. previously worked together in the same unit, but in March of 2014 GLADSTONE and W.J. were assigned to different units.

7.      On the evening of March 26, 2014, GLADSTONE, who was on duty, was having dinner with Officer 1 at a restaurant in Southeast Baltimore.  GLADSTONE received a call on his cell phone from W.J., who was in a panic.  GLADSTONE answered the call but left the restaurant to speak on the phone out of Officer 1's presence.  W.J. had just deliberately run over an arrestee, D.S., in the front yard of a home in Northeast Baltimore.  GLADSTONE went back inside the restaurant and asked Officer 1 if he had a BB gun and when Officer 1 told him he did not, GLADSTONE asked Officer 1 to call Officer 1's partner, Officer 2.  Officer 1 did as directed but Officer 2, who was not working that day, told Officer 1 he did not have a BB gun either.  Officer 1 told GLADSTONE that Officer 2 did not have a BB gun either. GLADSTONE then left the restaurant a second time and went to the trunk of the BPD vehicle he was driving where he retrieved a BB gun.

8.      GLADSTONE went back into the restaurant and told Officer 1 that they had to leave immediately.  GLADSTONE then drove at a high rate of speed to the site of the D.S.'s arrest on Anntana Avenue and Belair Road in Northeast Baltimore City.

2

9.      Once there, GLADSTONE exited his vehicle and carried a BB gun to the front yard of the house where D.S. had been run over. GLADSTONE dropped the BB gun near a pickup truck where D.S. lay injured on the ground, unable to use his legs.

10.     GLADSTONE then walked over to W.J. and Officer 3. GLADSTONE told W.J., in Officer 3's presence, "it's over by the truck," or words to that effect, and GLADSTONE told W.J. to have someone search by the truck. GLADSTONE then left the scene and drove away with Officer 1.

11.     W.J. told Officer 4 that a gun was in the grass and told Officer 4 to move it under the pickup, closer to the victim. Officer 4 retrieved the BB gun from the grass and placed the BB gun near the front driver side wheel underneath the pickup truck.

12.     The BB gun was then seen by another BPD officer and ultimately recovered by the BPD's crime lab unit.

13.     D.S. was taken from the scene to the hospital, in custody, where drugs were recovered from him. He was then taken from the hospital to BPD's Central Booking where he was charged. Those charges included possession, use and discharge of a gas or pellet gun, for the BB gun that GLADSTONE planted at the scene of D.S.'s arrest, and a number of drug offenses. W.J. wrote a false statement of probable cause in the name of Officer 5, which Officer 5 agreed to submit in support of those charges. W.J. approved the false statement of probable cause as Officer 5's supervisor.

14.     D.S. was detained on those charges until at least April 2, 2014.

15.     The charges against D.S. arising out of his arrest on March 26, 2014, were disposed of by *nolle prosequi*, which is a form of dismissal on January 16, 2015.

16.     Between in or about March 26, 2014, and January 16, 2015, in the District of Maryland and elsewhere, the defendant,

**KEITH ALLEN GLADSTONE,**

while acting under color of law, knowingly and willfully conspired and agreed with W.J. and with other persons both known and unknown to the grand jury, to injure, oppress, threaten, and intimidate D.S. in the free exercise and enjoyment of the right secured to him by the Constitution and the laws of the United States, not to be deprived of liberty without due process of law, which includes the right not to be deprived of liberty on the basis of false evidence intentionally presented against him by one acting under color of law.

18 U.S.C. § 241

## COUNT TWO
### (Conspiracy to Commit Offenses Against the United States)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 15 of Count 1 are realleged and incorporated herein.

2.     Between in or about March 26, 2014, and January 16, 2015, in the District of

Maryland and elsewhere, the defendant,

### KEITH ALLEN GLADSTONE,

did unlawfully, voluntarily, intentionally and knowingly conspire, combine, confederate, and

agree with W.J., and others known and unknown to the Grand Jury, to commit offenses against

the United States that is, to knowingly conceal, cover up and falsify and make false entries in an

official Statement of Probable Cause in the District Court of Maryland for Baltimore City

reflecting W.J.'s actions, and the actions of his fellow Baltimore Police Department officers, in

relation to the seizure of a BB gun from D.S., with the intent to impede, obstruct and influence

the investigation and proper administration of that matter, a matter within the jurisdiction of the

United States Department of Justice, a department and agency of the United States, or in relation

to or contemplation of any such matter or case, in violation of 18 U.S.C. § 1519.

### Overt Acts

3.     In furtherance of the conspiracy and to achieve its objects and purposes, members

of the conspiracy committed the following overt acts, among others, on March 26, 2014, in the

District of Maryland and elsewhere:

   a.   W.J. called GLADSTONE from the scene of D.S.'s arrest.

   b.   GLADSTONE, who was at a restaurant with Officer 1 when he received the call

        from W.J., asked Officer 1 if he had a BB gun.

5

c.  When Officer 1 said he didn't, GLADSTONE asked Officer 1 to call Officer 2 to see if he had a BB gun.

d.  When neither Officer 1 nor Officer 2 had a BB gun, GLADSTONE retrieved one from his BPD vehicle.

e.  After retrieving the BB gun, GLADSTONE drove it to the scene of D.S.'s arrest.

f.  Once he arrived at the scene of D.S.'s arrest, GLADSTONE placed the BB gun near a pickup truck parked in the driveway of a residence on Anntana Avenue in Baltimore, Maryland.

g.  GLADSTONE then told W.J. that the BB gun was "over by the truck" and told W.J. to have someone search by the truck.

h.  W.J. then told Officer 4 to move the gun that GLADSTONE had planted closer to where W.J. had struck D.S. with his vehicle.

i.  Later that evening, Officer 5, at W.J.'s direction, filed a false Statement of Probable Cause purporting to describe the events surrounding the arrest of D.S., including the recovery of the BB gun that GLADSTONE had planted on the scene, and omitting GLADSTONE's name from the report.

18 U.S.C. § 371

## COUNT THREE
### (Witness Tampering by Causing or Inducing to
### Withhold Communication with Law Enforcement)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 15 of Count 1 are realleged and incorporated herein.

2.      On March 1, 2017, W.J. and six other officers who had been members of the BPD's Gun Trace Task Force ("GTTF") were arrested on federal racketeering charges. Thereafter, it became public that multiple GTTF defendants were cooperating and providing information to the United States in an ongoing investigation.

3.      In January 2018, GLADSTONE went to trial in a civil suit in which he had been named as a defendant. Officer 1 was called as a witness. At the courthouse, GLADSTONE asked Officer 1 if he wanted to bring his children swimming at a YMCA pool near GLADSTONE's home in Pennsylvania. Officer 1 said he would like to but then GLADSTONE told Officer 1 to use his wife's cell phone to call GLADSTONE's wife's cell phone. Officer 1 had never communicated with GLADSTONE using his wife's cell phone or by calling GLADSTONE's wife's cell phone. Officer 1 used his wife's cell phone to call GLADSTONE's wife's cell phone, and Officer 1 and GLADSTONE arranged a date to go to the YMCA.

4.      Officer 1 went to the YMCA near GLADSTONE's home in Pennsylvania. GLADSTONE had arranged to meet in the swimming pool to ensure that Officer 1 did not have a recording device on him. Once GLADSTONE and Officer 1 were in the pool, Officer 1 asked GLADSTONE words to the effect of, "do you have anything to worry about now, you know, since [W.J.] was arrested, do you have any concerns?" GLADSTONE responded that the only thing he was worried about was the incident on Belair Road, which was a reference to the arrest of D.S. GLADSTONE told Officer 1 that if he was brought in for questioning by federal law enforcement or prosecutors who had investigated the GTTF, that Officer 1 should lie and tell

7

them that he and GLADSTONE were only at the crime scene for "scene security," which Officer 1 knew was not true since they did not provide any "scene security." Officer 1 then said words to the effect of, "you had me call [Officer 2], my partner, asking him for a BB gun," and GLADSTONE responded with words to the effect of, "don't worry about [Officer 2], he doesn't know anything, I got it from my trunk," referring to the BB gun that GLADSTONE brought to the scene of D.S.'s arrest at Belair Road and Anntana Avenue.

5.      Between in or about January 1, 2018, and February 6, 2019, in the District of Maryland and elsewhere, the defendant,

### KEITH ALLEN GLADSTONE,

did knowingly corruptly persuade, and attempt to corruptly persuade, Officer 1 with the intent to influence, delay and prevent the communication to the Federal Bureau of Investigation of information relating to the commission and possible commission of Federal offenses, namely the conspiracy to violate D.S.'s civil rights, as charged in Count One, and the conspiracy against the United States as charged in Count Two. Specifically, GLADSTONE directed Officer 1 to lie to federal law enforcement about GLADSTONE and Officer 1's actions during the arrest of D.S.

18 U.S.C. § 1512(b)(3)

*Robert K. Hur / FJW*
ROBERT K. HUR
UNITED STATES ATTORNEY

A TRUE BILL:

*February 27, 2019*
Date

**SIGNATURE REDACTED**

Foreperson