

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Leo J. Wise
Assistant United States Attorney
Leo.Wise@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4909
MAIN: 410-209-4800
FAX: 410-962-3091

May 10, 2019

David Irwin, Esq.
301 W. Pennsylvania Avenue
Towson, MD 21204

Re:   United States v. Keith Gladstone,
Criminal No. CCB-19-094

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Keith Gladstone (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by May 17, 2019, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to plead guilty to Count 1 of the Indictment which charges the Defendant with conspiracy to deprive civil rights, in violation of 18 U.S.C. § 241. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

First, that the defendant entered into a conspiracy to injure, oppress, threaten, or intimidate D.S.;

Second, that the defendant intended to interfere with D.S.'s exercise or enjoyment of a right which is secured or protected by the Constitution or laws of the United States—that is, the right not to be deprived of liberty without due process of law, which includes the right not to be deprived of liberty on the basis of false evidence intentionally presented against him by one acting under color of law; and

Third, that D.S. was present in any state, district, or territory of the United States.

## Penalties

3.      The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| CT | STATUTE | MAX IMPRISONMENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|----|---------|------------------|------------------------|----------|---------------------|
| 1  | 18 U.S.C. § 241 | 10 years | 3 years | $250,000 | $100 |

        a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

        b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

        c.      Payment: If a fine is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

        f.      Collection of Debts: If the Court imposes a fine, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

        a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant

would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United

3

States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that the applicable guideline calculation is as follows:

a.  Count One
    i.      Base Offense Level (U.S.S.G. § 2H1.1(a)(2))              12
    ii.     Committed Under Color of Law (U.S.S.G. § 2H1.1(b)(1))   +6
    iii.    Aggravating Role (U.S.S.G. § 3B1.1)                     +2
    iv.     Obstructing or Impeding Administration of Justice
                 (U.S.S.G. § 3C1.1)                            +2

                                TOTAL     $\overline{22}$

      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between

the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

        a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statutes to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statutes to the extent that such challenges can be legally waived.

        b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

5

c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Defendant's Conduct Prior to Sentencing and Breach

13.   a.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

11.   The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. ~~If the Court imposes any sentence other than 151 months incarceration, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).~~

## Entire Agreement

12.   This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those

set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

     If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

                     Very truly yours,

                     Robert K. Hur
                     United States Attorney

By: _____

                     Leo J. Wise
                     Derek E. Hines
                     Assistant United States Attorneys

     I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5-13-19
Date                     Keith Gladstone

     I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

5-13-19
Date                     David Irwin, Esq.

7

## ATTACHMENT A

## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

1.      The Baltimore Police Department ("BPD") is an agency of the State of Maryland whose law enforcement jurisdiction includes Maryland's largest city, Baltimore.

2.      Sworn members of the BPD must abide by the Law Enforcement Officer's Code of Ethics, which provides, in pertinent part:

> As a Law Enforcement Officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation; the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department … I recognize the badge of my office as a symbol of public faith and I accept it as a public trust to be held so long as I am true to the ethics of police service.

3.      KEITH ALLEN GLADSTONE joined the BPD on November 20, 1992, and became a police officer. GLADSTONE was promoted to Sergeant on December 16, 2011. GLADSTONE retired from the BPD on December 25, 2012, but then was reinstated as a Sergeant on December 9, 2013. In March 2014, GLADSTONE was the officer-in-charge of a Special Enforcement Section (SES) unit assigned to BPD's Western District. GLADSTONE retired for a second time from the BPD on May 1, 2017.

4.      On the evening of March 26, 2014, GLADSTONE, who was on duty, was having dinner with Officer 1 at a restaurant in Baltimore. GLADSTONE received a call on his cell phone from Sergeant 1, who was in a panic. GLADSTONE answered the call but left the restaurant to speak on the phone out of Officer 1's presence. Sergeant 1 had just run over an arrestee, D.S., in the front yard of a home in Northeast Baltimore. GLADSTONE went back inside the restaurant and asked Officer 1 if he had a BB gun and when Officer 1 told him he did not. Officer 1 then called his partner, Officer 2.

5.      Officer 2, who was not working that day, had a BB gun at his home. GLADSTONE and Officer 1 then drove to Officer's 2 home and retrieved the BB gun.

8

6.      GLADSTONE then drove to the site of the D.S.'s arrest on Anntana Avenue and Bel Air Road in Northeast Baltimore City.

7.      Once there, GLADSTONE exited his vehicle and carried a BB gun to the front yard of the house where D.S. had been run over.  GLADSTONE dropped the BB gun near a pickup truck that was close to the BPD vehicle that had struck D.S.

8.      GLADSTONE then walked over to Sergeant 1 and Officer 3.  GLADSTONE told Sergeant 1, in Officer 3's presence, "it's over by the truck," or words to that effect.

9.      The BB gun was then seen by another BPD officer and ultimately recovered by the BPD's crime lab unit.

10.     D.S. was taken from the scene to the hospital, in custody, where drugs were recovered from him.  He was then taken from the hospital to BPD's Central Booking where he was charged.  Those charges included possession, use and discharge of a gas or pellet gun, for the BB gun that GLADSTONE planted at the scene of D.S.'s arrest, and a number of drug offenses.  Sergeant 1 wrote a false statement of probable cause in the name of Officer 5, which Officer 5 agreed to submit in support of those charges.  Sergeant 1 approved the false statement of probable cause as Officer 5's supervisor.

11.     D.S. was detained on those charges until at least April 2, 2014.

12.     The charges against D.S. arising out of his arrest on March 26, 2014, were disposed of by *nolle prosequi*, which is a form of dismissal on January 16, 2015.

13.     On March 1, 2017, Sergeant 1 and six other officers who had been members of the BPD's Gun Trace Task Force ("GTTF") were arrested on federal racketeering charges. Thereafter, it became public that multiple GTTF defendants were cooperating and providing information to the United States in an ongoing investigation.

14.     In January 2018, GLADSTONE and Officer 1 arranged to meet in person.  In order to avoid detection, they arranged the meeting using their wives' cell phones.

15.     Officer 1 went to the YMCA near GLADSTONE's home in Pennsylvania. GLADSTONE had arranged to meet in the swimming pool to ensure that Officer 1 did not have a recording device on him.  Once GLADSTONE and Officer 1 were in the pool, Officer 1 asked GLADSTONE words to the effect of, "do you have anything to worry about now, you know, since [Sergeant 1] was arrested, do you have any concerns?"  GLADSTONE responded that the only thing he was worried about was the incident on "Bel Air Road," which was a reference to the arrest of D.S.  GLADSTONE told Officer 1 that if he was brought in for questioning by

federal law enforcement or prosecutors who had investigated the GTTF, that Officer 1 should tell them that he, Officer 1, was not there, which both knew was not true. When Officer 1 said he had been seen by another officer at the scene, GLADSTONE told him to say that they were there for "scene assessment" or words to that effect, which was also not true because they did not provide any "scene assessment." Officer 1 then asked GLADSTONE, "what about [Officer 2]," referring to the fact that Officer 2 knew they had obtained the gun from him. GLADSTONE then told Officer 1 to tell law enforcement that he, GLADSTONE, had taken the gun from his, GLADSTONE's, trunk, which was also not true, since GLADSTONE and Officer 1 had obtained the gun from Officer 2.

SO STIPULATED:

Leo J. Wise
Derek E. Hines
Assistant United States Attorneys

Keith Gladstone
Defendant

David Irwin, Esq.
Counsel for Defendant

10